FILED
United States Court of Appeals
Tenth Circuit

April 5, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

GLENN DELL COOK,

      Defendant-Appellee.

No. 08-2297

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 2:CR–06-02403-RCB)**

---

Richard C. Williams, (Gregory J. Fouratt, United States Attorney, with him on the briefs), Assistant United States Attorney, Las Cruces, New Mexico, for Plaintiff-Appellant.

Peter Schoenburg, (Marc M. Lowry with him on the brief), of Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, LLP, Albuquerque, New Mexico, for Defendant-Appellee.

---

Before **BRISCOE, McWILLIAMS,** and **MURPHY**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

    In this interlocutory appeal, the United States challenges the district court's

suppression of statements Defendant Glenn Dell Cook made to a jail-house

informant.  Also before this court is Cook's motion to dismiss the United States' appeal as untimely filed.

We have jurisdiction over the matter pursuant to 18 U.S.C. § 3731 ("An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . .").  We deny Cook's motion to dismiss the United States' appeal, reverse the district court's order to suppress Cook's statements, and remand for further proceedings.

**I**

The essential facts of this case are not disputed.  On December 30, 2004, cooperating witness Phillip Gantz was found dead in the early morning hours in a medical unit cell at Doña Ana County Detention Center ("DACDC") in Las Cruces, New Mexico.  At the time, Cook and two other inmates were housed in the same cell with Gantz.  Cook was incarcerated at the DACDC as a federal pre-trial detainee in connection with a federal drug case.

Investigators with the local sheriff's office responded to the scene, and although the cause of Gantz's death was not apparent, his death was thought to be from natural causes because Gantz was asthmatic.  The sheriff's office investigators spoke briefly with Cook and the two other inmates who had also been housed in Gantz's cell.  All three stated that they had slept through the night and did not see or hear anything.  The next day, after learning from an autopsy that Gantz died from strangulation, the sheriff's office investigators began

2

investigating the case as a homicide and spoke to Cook again and in more detail at the DACDC.[1]

Two months later, in March 2005, sheriff's office investigators returned to DACDC to follow up on information that one of Cook's cellmates had recently admitted to killing Gantz. While at the DACDC conducting interviews, the sheriff's office investigators had Cook brought from his housing area to an interview room for questioning. Almost immediately after being brought to the interview room, Cook stated that he did not want to speak to the investigators and that he had a right to an attorney. Cook went to the door and asked to be returned to his cell. The interview was terminated and Cook was taken back to his cell.

The next month, in April 2005, the sheriff's office and the FBI received information from a cooperating informant who also was incarcerated at the DACDC on federal charges. The cooperating informant stated that Cook told him about Cook's role in the Gantz murder, as well as the involvement of Cook's two cellmates. The cooperating informant was never a suspect in Gantz's murder, and he was never implicated in the events surrounding Gantz's death. However, the cooperating informant was himself facing a lengthy federal sentence. The United States promised to recommend leniency for the cooperating informant should he

---

[1] The United States conceded before the district court that, although Cook's statements during this interview were voluntary, because they were not given after administration of <u>Miranda</u> warnings, the statements were inadmissible.

3

agree to approach Cook and question him about Gantz's murder.

The FBI then became involved in the Gantz murder investigation, and the sheriff's office withdrew shortly thereafter. The FBI was not informed of Cook's March 2005 encounter with the sheriff's office investigators, or that he invoked his Miranda rights during that encounter.

In June 2005, through the efforts of the FBI, the cooperating informant was wired with two recording devices and placed in a cell at the DACDC with Cook. The placement of the cooperating informant and Cook in the same cell was the result of an orchestrated mock "reclassification day" in the DACDC. The cooperating informant asked Cook about the Gantz murder and Cook described the roles that each of the three inmates played in killing Gantz. This recorded statement was suppressed by the district court and is now the subject of this appeal.

Cook and his two cellmates were eventually charged in a five-count indictment with offenses related to the murder of Gantz. Cook subsequently filed a motion to suppress all statements made to the cooperating informant, and the district court held a hearing on the motion. Cook argued that after he invoked his Miranda rights in March 2005, the United States improperly reinitiated contact with him in June 2005 when the FBI arranged for the cooperating informant to talk to Cook about the Gantz murder, arguing that the United States' conduct violated Michigan v. Mosley, 423 U.S. 96 (1975), Edwards v. Arizona, 451 U.S.

4

477 (1981), and United States v. Alexander, 447 F.3d 1290 (10th Cir. 2006).

Cook also argued that the challenged statement was involuntary because Cook believed the cooperating informant's motivation in asking about the Gantz murder was to determine if Cook was cooperating with the government, which the cooperating informant could then expose within the DACDC.

The United States argued that at the time of the challenged statement, Cook viewed the cooperating informant as a fellow inmate and was therefore not in a police-dominated atmosphere so as to implicate the concerns underlying Miranda. The United States also argued that Cook was not in Miranda custody at the time of the challenged statement and therefore Miranda and Edwards did not apply.

The district court entered an order granting Cook's motion to suppress on September 29, 2008. The district court found: (1) in March 2005, Cook unequivocally invoked his right to counsel and right to remain silent, and never subsequently waived those rights; (2) the cooperating informant was an agent of the government when he questioned Cook in June 2005; (3) the cooperating informant's questioning of Cook violated the Constitution because re-initiation of interrogation after invocation of Miranda rights is constitutionally prohibited; (4) although a substantial interval had passed between the March 2005 questioning and the cooperating informant's questioning in June 2005, Cook was not given fresh Miranda warnings, and the subject of the June 2005 questioning was the same as the March 2005 questioning. Based upon these findings, the district

5

court concluded that the government violated <u>Miranda</u> when it re-initiated questioning of Cook and granted Cook's motion to suppress his June 2005 statements.

On October 6, 2008, the United States filed a motion to reconsider. The United States stated that it filed the motion "to clarify that its arguments also include that (1) there was no custodial interrogation and thus <u>Miranda</u> did not apply and, regardless, (2) there was a break in custody between the invocation and the statement and thus <u>Edwards</u> did not apply." Aplt. App. at 186. The district court entered an order denying the motion to reconsider on November 4, 2008. On December 2, 2008, the United States filed a notice of appeal. Shortly thereafter, Cook filed his motion to dismiss the United States' appeal as untimely filed.

## II

*A. Appellate Jurisdiction*

A timely notice of appeal is "mandatory and jurisdictional." <u>Bowles v. Russell</u>, 551 U.S. 205, 209 (2007). The United States had thirty days to appeal the district court's order. 18 U.S.C. § 3731; <u>see also</u> Fed. R. App. P. 4(b)(1)(B). In a criminal case, a timely motion for reconsideration, defined as one filed within the time to appeal, postpones the time to appeal until the court disposes of the motion. <u>See</u> <u>United States v. Healy</u>, 376 U.S. 75, 78 (1964). A timely motion for reconsideration renders the original judgment non-final for purposes of appeal

6

as long as the motion for reconsideration is pending, whether the issue involved is factual or legal.  United States v. Dieter, 429 U.S. 6, 8 (1976).

In United States v. Ibarra, 502 U.S. 1 (1991), the Supreme Court reversed this court's decision that the government's timely motion to reconsider based on grounds previously abandoned by the government did not postpone the time to appeal.  The Supreme Court reaffirmed the general rule it had set forth in Healy. Id. at 6–7.  The Court stated:

> [T]here is no certain way of deciding in advance which motions for reconsideration have the requisite degree of merit, and which do not.  Given this, it is far better that all such motions be subsumed under one general rule—the rule laid down in Healy.  Without a clear general rule litigants would be required to guess at their peril the date on which the time to appeal commences to run.  Prudent attorneys would be encouraged to file notices of appeal from orders of the district court, even though the latter court is in the course of considering a motion for rehearing of the order.  Less prudent attorneys would find themselves litigating in the courts of appeals whether a motion for reconsideration filed in the district court had sufficient potential merit to justify the litigant's delay in pursuing appellate review.  Neither development would be desirable.

Id. at 7 (internal citations omitted).  With the strong preference for the clear, general rule of Healy in mind, we turn to the motion for reconsideration in this case.

Here, Cook argues that the government's motion was not a true motion for reconsideration and therefore did not postpone the time in which to appeal.  Cook

7

contends that the motion merely sought clarification of the wording of the district court's order to include two additional legal arguments presented by the government.

Although the United States' motion is not a model of clarity, the motion can be read to indicate that the United States was seeking reconsideration of the district court's order, i.e., for the district court to "reconsider [a] question decided in the case." Id. (internal quotations omitted; alteration in original). It is true that there was no prayer for relief in the United States' motion for reconsideration, but the United States argued two issues which would have resulted in reversal if the court would have ruled in its favor on either one. Thus, we do not read the motion as merely seeking to correct the wording of the district court's order. Moreover, adopting Cook's narrow reading of the government's motion could result in a blurring of the general rule, which would leave litigants to guess when the time to appeal commences to run, a result contrary to that preferred in Healy and Ibarra. Therefore, we conclude that the United States filed a timely motion for reconsideration, which postponed the running of its time to appeal.

After the denial of the motion to reconsider, the United States filed a notice of appeal within thirty days. As a result, we have jurisdiction over the United States' appeal, and deny Cook's motion to dismiss.

*B. Motion to Suppress*

When reviewing an order granting a motion to suppress, this court accepts the district court's factual findings unless clearly erroneous, and views the evidence in the light most favorable to the district court's finding. United States v. Little, 18 F.3d 1499, 1503 (10th Cir. 1994) (en banc). Moreover, at a hearing on a motion to suppress, "the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." United States v. Fernandez, 18 F.3d 874, 876 (10th Cir. 1994). Nevertheless, we review de novo an ultimate question of constitutional law. United States v. Wynne, 993 F.2d 760, 764 (10th Cir. 1993).

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without a prior warning. Id. at 444. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody . . . ." Id. The warning mandated by Miranda was meant to preserve the Fifth Amendment privilege during "incommunicado interrogation of individuals in a police-dominated atmosphere." Id. at 445. That atmosphere is believed to generate "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Id. at 467. Though Miranda must be enforced strictly,

9

its application lies "only in those types of situations in which the concerns that powered the decision are implicated." Berkemer v. McCarty, 468 U.S. 420, 437 (1984).

In Illinois v. Perkins, the Supreme Court held that an inmate's confession was admissible because it was not the product of a custodial interrogation. 496 U.S. 292, 296–97 (1990). In that case, the state sought to elicit statements from an inmate regarding a murder by placing an undercover agent in his cell. Id. at 294–95. The inmate proceeded to confide in the undercover agent, relating specific details of the murder. Id. at 295. The undercover agent did not give the inmate Miranda warnings prior to the conversations. Id.

The Supreme Court noted that the rationale underlying Miranda and its progeny dictates that the warnings are only necessary during "incommunicado interrogation of individuals in a police-dominated atmosphere." Id. at 296 (quoting Miranda, 384 U.S. at 445). The Court recognized that it was "the premise of Miranda that the danger of coercion results from the interaction of custody and official interrogation." Id. at 297. When the government appears to control the suspect's fate, the Court has assumed that there are pressures that may weaken the suspect's will. Id. But when the suspect "does not know that he is conversing with a government agent, these pressures do not exist." Id. Thus, the concerns underlying Miranda are inapplicable in the Perkins undercover agent context, even when the suspect is incarcerated. Id.

10

Here, as in Perkins, Cook was completely unaware that he was in the presence of a government agent. Because Miranda and its progeny were directed at the prevention of pressure and coercion in custodial interrogation settings, the fears motivating exclusion of confessions which are the product of such custodial interrogation settings are simply not present in this case. Id. at 296. ("Conversations between suspects and undercover agents do not implicate the concerns underlying Miranda. The essential ingredients of a 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate."). Deception which takes advantage of a suspect's misplaced trust in a friend or fellow inmate does not implicate the right against self-incrimination nor the Fifth Amendment right to counsel. Id. at 297–300. A suspect in those circumstances speaks "at his own peril." Id. at 298.

Cook argues that his case is distinguishable from Perkins because he asserted his right to counsel prior to his conversation with the cooperating informant, and thus, Edwards v. Arizona, 451 U.S. 477 (1981), is controlling. In Edwards, the Supreme Court held that after an accused clearly invokes his right to have counsel present during a custodial interrogation, officers must cease all questioning and may not reinitiate questioning on any matter until counsel is provided, "unless the accused himself initiates further communications, exchanges, or conversations with the police." Id. at 484–85. In Edwards, the

11

defendant was arrested, informed of his Miranda rights, and questioned in jail until the defendant requested an attorney. Id. at 478–79. Questioning ceased, but the next day police officers returned to the jail, again informed the defendant of his Miranda rights, and then obtained the defendant's confession when he said he was willing to talk. Id. at 479. The Edwards rule requires that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." Id. at 484 (emphasis added).

But in order to implicate Miranda and Edwards, there must be a custodial interrogation. See Montejo v. Louisiana, --- U.S. ----, 129 S.Ct. 2079 (2009) (discussing custodial interrogation in the context of the Sixth Amendment right to counsel). In Montejo, the Supreme Court noted that the Miranda-Edwards line of cases applies "only in the context of custodial interrogation. If the defendant is not in custody then those decisions do not apply." Id. at 2090; see also United States v. Bautista, 145 F.3d 1140, 1147 (10th Cir. 1998) ("[B]oth a custodial situation and official interrogation are required. Absent either a custodial situation or official interrogation, Miranda and Edwards are not implicated."). Edwards depended on the existence of custodial interrogation. But in this case, Cook was unaware that he was speaking to a government agent. As a result, his questioning lacked the police domination inherent in custodial interrogation. See

12

Perkins, 496 U.S. at 296–97. Thus, without custodial interrogation, Edwards does not apply. And because Edwards does not apply, it is irrelevant that Cook had previously invoked his right to counsel in March 2005 when questioned by the sheriff's office investigators.

Cook also contends that the government violated his right to remain silent under Michigan v. Mosley, 423 U.S. 96 (1975). In that case, the Supreme Court applied Miranda and held that once a suspect invokes the right to remain silent during a custodial interrogation, the admissibility of statements obtained during a subsequent custodial interrogation depends upon whether the suspect's right to cut off questioning was "scrupulously honored." Id. at 104

Cook relies on our decision in United States v. Alexander, 447 F.3d 1290 (10th Cir. 2006), to stand for the proposition that executive-initiated questioning is permissible under Mosley only under four conditions: "(1) at the time the defendant invoked his right to remain silent, the questioning ceased; (2) a substantial interval passed before the second interrogation; (3) the defendant was given a fresh set of Miranda warnings; and (4) the subject of the second interrogation [is] unrelated to the first." Id. at 1294 (alteration in original). Cook then argues that because those four conditions were not met, his statements were inadmissible under Mosley.

In Alexander, the defendant, an inmate at a federal correctional institution, was implicated in an assault on another inmate. Id. at 1292. When the FBI

13

questioned him, he invoked his Fifth Amendment right to remain silent, and returned to his cell. Id. Subsequently, the FBI placed Alexander's friend in the adjacent cell, and the friend convinced Alexander to contact the FBI and give his statement. Id. at 1293. Alexander then contacted the FBI, waived his Miranda rights, and confessed to assaulting the other inmate. Id. No incriminating statements were made to Alexander's friend—his only involvement was at his own request, and related only to convincing Alexander to speak with the FBI. See id.

In Alexander, we concluded that the defendant's friend was not a government agent. Id. at 1296. In that case, we began with the recognition that the Constitution applies only to government actors, not private parties. See id. at 1294. We then concluded that because Alexander's friend was not a government agent, the Constitution was not implicated. See id. at 1297. Since the Constitution did not apply to the conversation between Alexander and his friend, we did not reach the next question: whether that conversation amounted to an unlawful custodial interrogation. In the case at bar, it is not disputed on appeal that the cooperating informant who obtained incriminating statements from Cook was a government agent. Nor is there any question that the Constitution applies to government agents. Rather, we are presented with a different question than was presented in Alexander. We are presented with the specific question of whether the Fifth Amendment prohibits a government agent from questioning a

14

defendant not subject to custodial interrogation if that defendant has previously invoked his Miranda rights. We must now answer whether Mosley applies absent custodial interrogation.

Like Edwards, Mosley rests on the holdings in Miranda, and thus, the outcome in Mosley turned on whether his statements were the product of custodial interrogation. Mosley requires law enforcement to honor an individual's invocation of the right to remain silent in order to "counteract[] the coercive pressures of the custodial setting." 423 U.S. at 104 (emphasis added). As discussed above, Cook did not know he was speaking to a government agent, and therefore, he was not subject to the pressures of a custodial setting. Thus, Mosley does not apply.

Here, there is no question that Cook spoke freely with the cooperating informant, was not coerced, and the circumstances surrounding their conversation were nothing akin to police interrogation. In our view, such casual questioning by a fellow inmate does not equate to "police interrogation," even though the government coordinated the placement of the fellow inmate and encouraged him to question Cook. See, e.g., United States v. Ingle, 157 F.3d 1147, 1150 (8th Cir. 1998) (holding that the government's encouragement of conversation within prison does not establish "the kind of coercive police activity that renders a confession involuntary").

Accordingly, we conclude Cook's Fifth Amendment right to counsel and

15

right to remain silent were not violated, and reverse the district court's grant of Cook's motion to suppress.

Because we conclude that there was no violation of Cook's Fifth Amendment rights, we need not address whether there was a sufficient break in custody to negate Cook's prior assertion of his Miranda rights.[2]

## III.

We DENY defendant's motion to dismiss this appeal as untimely filed. We REVERSE the district court's order granting defendant's motion to suppress and

---

[2] While this case was pending on appeal, the Supreme Court announced that a two week "break in custody ends the presumption of involuntariness established in [Edwards]." Maryland v. Shatzer, --- U.S. ----, 130 S. Ct. 1213, 175 L. Ed. 2d 1045, slip op. at 1, 18 (Feb. 24, 2010). Additionally, the Supreme Court ruled that a prisoner's return to the general prison population amounted to a break in Miranda custody. Id. at 14–16. We directed the parties to file supplemental briefs addressing Shatzer.

In Shatzer, the defendant was incarcerated in a state correctional facility, when a police detective questioned him about an unrelated crime. Id. at 1–2. The defendant said that he wanted an attorney, and questioning ceased. Id. at 2. Two and a half years later, the defendant was still incarcerated when a different detective visited the defendant, read him his Miranda rights, and asked him about the same crime. Id. The defendant then waived his Miranda rights and made incriminating statements. Id. at 2–3.

"In every case involving Edwards, the courts must determine whether the suspect was in custody when he requested counsel and when he later made the statements he seeks to suppress." Id. at 12. The parties in Shatzer did not dispute that the defendant was subject to custodial interrogation during the second interview when he made incriminating statements. Id. at 13. In the case at bar, however, we have concluded that Cook was not subject to custodial interrogation when he made the incriminating statements at issue. Because we conclude that Miranda and Edwards do not apply to Cook's conversation with the cooperating informant, the rule announced in Shatzer is likewise inapplicable.

16

REMAND to the district court for further proceedings. We GRANT the parties' motions to seal the opening brief, appellant's appendix, response brief, supplemental appendix, reply brief, supplemental brief, supplemental response brief, and supplemental reply brief.