Argued and submitted October 15, 2014, affirmed December 9, 2015, petition for review denied April 7, 2016 (359 Or 39)

RAFAEL GONZALEZ GUTIERREZ,
aka Rafael Gutierrez Gonzalez,
*Petitioner-Appellant,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
11068827P, 11099043P;
A151182 (Control), A151183

364 P3d 725

Brian Patrick Conry argued the cause and filed the briefs for appellant.

Paul L. Smith, Assistant Attorney General, argued the cause for respondent. On the brief were Mary H. Williams, Deputy Attorney General, Anna M. Joyce, Solicitor General, and Erin C. Lagesen, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Petitioner was convicted of attempted first-degree rape, three counts of first-degree sexual abuse, and two counts of attempted aggravated murder. He subsequently sought post-conviction relief, contending that his trial counsel in the criminal case had provided him with constitutionally inadequate representation by failing to move to suppress evidence that he asserts that the state had obtained in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution. Specifically, petitioner alleged that the police had violated his rights under those provisions when they recorded incriminating statements that he made in telephone conversations that he had with an undercover police officer. The post-conviction court entered a general judgment denying relief, and petitioner appeals the judgment. For the reasons explained below, we affirm.

In late May 2003, petitioner tricked a woman into entering his car, took her to a motel, and tried to rape her. Police officers arrested petitioner and interrogated him. When they asked petitioner whether he spoke English, he responded that he wanted an attorney. The officers read petitioner his rights. Petitioner again asked for an attorney, and the officers stopped questioning him. The state subsequently charged petitioner by indictment on June 2, 2003, with first-degree kidnapping, second-degree kidnapping, attempted first-degree rape, coercion, and three counts of first-degree sexual abuse. Petitioner was jailed while awaiting trial.

Police arrested a person named Wilson on June 11, 2003. By happenstance, Wilson was jailed in the same facility as petitioner. Wilson and petitioner knew each other and began talking together. They ultimately discussed whether Wilson could arrange to have an individual with whom petitioner was feuding, DU, killed. Wilson replied that he had a friend who worked with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in Seattle whom Wilson thought might be interested in killing DU in exchange for money.

Wilson had a long history of cooperating with various law enforcement agencies. He had worked with the

Multnomah County Sheriff's Office since 1994, performing controlled buys of controlled substances and providing information to the police on drug investigations. He also had cooperated with ATF on numerous occasions, making controlled buys for its agents.

Wilson contacted the police and told them that petitioner was attempting to have DU killed. Wilson agreed with the police to arrange to place telephone calls between petitioner and an undercover police officer who posed as a hit man named "Bobby." On August 19, 2003, Wilson placed a call to Bobby and handed the phone to petitioner. During the call, petitioner told Bobby that, before killing DU, he should kill the victim in the pending criminal case. Petitioner agreed to pay Bobby $3,000 for each murder. A week later, Wilson initiated another call, during which petitioner agreed to have his relatives deliver $3,000 to Bobby at 8:00 p.m. that day and, in return, Bobby was to give the relatives photographs proving that he had killed the victim. In both phone calls, the parties referred to killing DU as "fixing the car" and to killing the victim as "fixing the little pickup" or "fixing [the victim's] car." Petitioner did not make any statements during the phone calls about his pending kidnapping and sexual-assault charges or the facts surrounding those charges.

Based on petitioner's discussions with Wilson and the undercover officer, the state indicted petitioner on September 4, 2003, for three counts of attempted aggravated murder, two counts of attempted murder, three counts of criminal conspiracy to commit aggravated murder, two counts of criminal conspiracy to commit murder, two counts of solicitation to commit murder, and a count of solicitation to commit aggravated murder.

Petitioner's murder-related and rape-related charges were tried together to the court. At trial, the court admitted as evidence transcripts of the calls between petitioner and the undercover officer. Wilson testified that petitioner first approached him and offered to pay him $700 to tell him where DU's van was located and to steal DU's dog. After Wilson had agreed to do that, petitioner asked him about having DU killed, which led to the discussions among

petitioner, Wilson, and the undercover officer about the proposed murder of DU and the victim.

Petitioner had a different account of his interactions with Wilson, testifying that Wilson first approached him about paying someone to fix the victim's car so that the victim could leave the state, and that he did not understand that fixing the victim's car was code for killing the victim. Petitioner's former jail cellmate testified that Wilson had approached petitioner about paying to have the "victim's car fixed"; however, the cellmate's testimony was limited to that conversation because the cellmate had been released from jail before petitioner and Wilson made the recorded phone calls.

The trial court convicted petitioner of attempted first-degree rape, three counts of first-degree sexual abuse, and all of the murder-related charges. The court explained its decision:

> "[THE COURT]:   I will say about the murder cases, that it was certainly not the credibility of [the informant] that determined the Court's verdict in those cases * * *.

> "Nonetheless, the fact that [the informant] is a less than truthful person, and, frankly, doesn't deserve any rewards for anything that he did in my view, doesn't mean that this defendant didn't commit these crimes, and, you know, my feeling is that when someone suggests killing the witness, the right answer is not 'Where do I send the money?'

> "* * * * *

> "When someone offers you an opportunity to have a witness killed, the right answer is not, 'Where do I send the money,' and, as I say, my feeling is that it's the defendant's own statements that, in effect, convinced me beyond a reasonable doubt that he was guilty of those crimes."

The court entered a judgment of conviction for the murder-related crimes and a separate judgment of conviction for the rape-related crimes.

Petitioner appealed both judgments. In *State v. Gonzales-Gutierrez*, 216 Or App 97, 171 P3d 384 (2007), *rev den*, 344 Or 194 (2008), we remanded petitioner's murder-related convictions to the trial court to merge them into

two counts of attempted aggravated murder but otherwise affirmed the judgment. We affirmed petitioner's convictions in the sexual-assault case without written opinion, and the Oregon Supreme Court denied review. *See State v. Gonzales-Gutierrez*, 209 Or App 170, 146 P3d 1170 (2006), *rev den*, 342 Or 473 (2007).

Petitioner subsequently sought post-conviction relief, claiming that he had received constitutionally inadequate assistance of counsel under both the Oregon and United States Constitutions. Specifically, petitioner alleged that his trial attorney had provided him with constitutionally deficient representation by failing to move to suppress the incriminating statements that petitioner had made to the informant and the undercover officer on the ground that the statements had been obtained in violation of petitioner's rights under the Fifth and Sixth Amendments to the United States Constitution.[1] Petitioner also alleged that his attorney should have moved to suppress the statements on the ground that they had been obtained in violation of petitioner's right to counsel under Article I, section 12, of the Oregon Constitution. However, petitioner did not make a separate argument under the Oregon Constitution. When, as here, the parties focus their arguments exclusively on the federal constitution, we will limit our analysis to the federal constitution unless countervailing considerations lead us to reject that approach. *See, e.g., Redwine v. Starboard, LLC*, 240 Or App 673, 682, 251 P3d 192 (2011). No countervailing considerations apply here. Hence, the claims before us concern only petitioner's rights under the Fifth and Sixth Amendments, which we consider separately.

Petitioner contended at his post-conviction trial that, after he requested an attorney when the police officers sought to interrogate him at the jail, the Fifth Amendment

---

[1] The Fifth Amendment provides, as relevant:

"No person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law * * *."

The Sixth Amendment provides, as relevant:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense."

barred the state from further interrogating him without the involvement of an attorney for him and, consequently, that the police had violated the Fifth Amendment when they obtained incriminating statements from him at the jail. Defendant responded that a motion to suppress petitioner's statements would have failed because petitioner did not know when he spoke to the informant and the undercover officer that he was speaking to state agents and, consequently, the statements had not been obtained in violation of petitioner's Fifth Amendment right to counsel.

The post-conviction court concluded that petitioner's trial attorney had failed to exercise reasonable professional judgment by failing to move under the Fifth Amendment to suppress petitioner's statements to the informant and the undercover officer. However, the court also concluded that petitioner had failed to prove that the informant had initiated contact with petitioner—rather than vice versa—and, consequently, petitioner had failed to prove that a motion to suppress petitioner's statements under the Fifth Amendment would have succeeded. Hence, petitioner was not prejudiced by trial counsel's failure to move under the Fifth Amendment to suppress the statements.

Petitioner assigns error to the post-conviction court's conclusion that trial counsel's failure to move under the Fifth Amendment to suppress petitioner's statements did not prejudice petitioner because petitioner failed to prove that the informant had initiated his conversations with petitioner, and, hence, petitioner failed to prove that the statements had been obtained in violation of his right to counsel. Defendant responds that there is evidence in the record to support the trial court's findings. Additionally, defendant asks us to affirm the post-conviction court on the alternate ground that petitioner was not subject to custodial interrogation because petitioner did not know that he was speaking with law enforcement officials when he spoke with the informant and the undercover officer, and, consequently, a motion under the Fifth Amendment to suppress petitioner's statements would have failed.

In *Miranda v. Arizona*, 348 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), the Supreme Court recognized that

the police might attempt to "persuade, trick or cajole [a suspect] out of exercising his constitutional right" against self-incrimination by "incommunicado interrogation of [the suspect] in a police-dominated atmosphere." *Id.* at 445, 455. To ensure against that, the Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. If, after providing those safeguards, the person being questioned asks to speak to an attorney, interrogation must end. *Id.* at 444-45.

Concerned in a subsequent case that the police might use a police-dominated atmosphere to coerce a suspect into waiving the suspect's right to counsel after the suspect has invoked that right, the Court held that, "having expressed [a] desire to deal with the police only through counsel, [an accused] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused * * * initiates further communication." *Edwards v. Arizona*, 451 US 477, 484-85, 101 S Ct 1880, 68 L Ed 2d 378 (1981).

Implicit in the Fifth Amendment right to counsel established in *Miranda* and *Edwards* is that the person conducting a custodial interrogation be understood to be a police officer by the person being interrogated. If a person in custody does not know or believe that the person with whom he or she is conversing is a police officer, then the right to counsel established in *Miranda* and *Edwards* is not implicated. *See Illinois v. Perkins*, 496 US 292, 296, 110 S Ct 2394, 110 L Ed 2d 243 (1990) ("The essential ingredients of a 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate.").

The Court applied that principle in *Perkins*. There, the defendant was suspected of murder and was being held on an unrelated charge. The government placed an informant in the defendant's cellblock with instructions to engage the defendant in conversation. The informant told the defendant that he did not plan to stay in jail and suggested that they

escape. While planning their escape, the informant told the defendant that he would be responsible for any murder that they committed in their escape and asked the defendant if he had ever killed anybody. The defendant proceeded to describe in detail the murder that the police suspected that he had committed. The Court held that the defendant had not been "interrogated" by the informant and, consequently, that the defendant's Fifth Amendment rights had not been violated. *Id.* at 296. Other courts have held that the Fifth Amendment right to counsel during custodial interrogation is not implicated by placing an informant in a suspect's cell, even after the suspect has invoked the suspect's right to counsel. *See United States v. Cook*, 599 F3d 1208 (10th Cir), *cert den*, 562 US 933 (2010) (holding that defendant's right to counsel was not violated when, after defendant invoked the right, an informant elicited incriminating statements from defendant, because Fifth Amendment right to counsel does not apply to interrogation by undercover agents); *see also Saliki v. Delo*, 990 F2d 386 (9th Cir 1993) (same); *United States v. Stubbs*, 944 F2d 828 (11th Cir 1991) (same); *People v. Guilmette*, 1 Cal App 4th 1534, 2 Cal Rptr 2d 750 (1991) (same).

We have discretion to affirm a trial court decision if the decision was correct on a basis other than the one on which the court relied. *State v. Rogers*, 330 Or 282, 295, 4 P3d 1261 (2000). When reviewing a trial court's decision, we will affirm the decision, even if the court's legal reasoning for the decision was flawed, if another legally correct reason supports the decision and the record was developed in a manner that supports the proffered alternative basis for affirmance. For us to do that, the facts in the record must be sufficient to support the alternative basis for affirmance, the court's decision must be consistent with the view of the evidence under the alternative basis for affirmance, and the record must materially be the same as would have been developed had the prevailing party raised the alternative basis for affirmance below. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

Those requirements are met here. The facts in the record unquestionably support the alternative basis for affirmance that defendant advances on appeal. Nothing in

the record suggests that petitioner knew that the informant or the undercover officer was a state agent or that petitioner felt that he could not terminate his interactions with them. Additionally, nothing about the post-conviction court's decision suggests that the post-conviction court believed that petitioner knew that he was speaking to the police. Finally, defendant argued throughout the post-conviction proceeding that the post-conviction court should deny petitioner's Fifth-Amendment-based claim on the ground that petitioner did not know that he was speaking to government agents. Hence, petitioner had the opportunity and incentive to establish—if he could—that he knew that the informant and the undercover officer were state agents. Petitioner did not do that. Accordingly, we affirm the post-conviction court's conclusion that petitioner was not prejudiced by his trial attorney's failure to move under the Fifth Amendment to suppress petitioner's statements, because the statements that petitioner made to the informant and the undercover officer were not made during custodial interrogation and, consequently, did not implicate petitioner's Fifth Amendment right to counsel.

We turn to whether petitioner was prejudiced by his trial attorney's failure to move under the Sixth Amendment to suppress petitioner's statements to the informant and the undercover officer. Under the Sixth Amendment, the defendant in a criminal prosecution has the right to the assistance of counsel at all critical stages of the prosecution. *E.g., Rothgery v. Gillespie County,* 554 US 191, 198, 128 S Ct 2578, 171 L Ed 2d 366 (2008). The right "does not attach until a prosecution is commenced." *McNeil v. Wisconsin,* 501 US 171, 175, 111 S Ct 2204, 115 L Ed 2d 158 (1991). For purposes of the Sixth Amendment, a prosecution commences at "the initiation of [adversarial] judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 US 682, 689, 92 S Ct 1877, 32 L Ed 2d 411 (1972). The Sixth Amendment right to counsel is violated when the police deliberately elicit an incriminating statement from a defendant without first obtaining a waiver of the defendant's right to have counsel present. *See, e.g., Fellers v. United States,* 540 US 519, 124 S Ct 1019, 157 L Ed 2d 1016 (2004). Unlike the Fifth Amendment, the Sixth

Amendment protects a defendant against the use of statements elicited by the police both in and outside the context of custodial interrogation. *E.g., Michigan v. Jackson*, 475 US 625, 632 n 5, 106 S Ct 1404, 89 L Ed 2d 631 (1986) ("[T]he Sixth Amendment provides a right to counsel *** even when there is no interrogation and no Fifth Amendment applicability.").

However, the Sixth Amendment right to counsel is offense specific. *McNeil*, 501 US at 175. In other words, "[i]t cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced." *Id.* Accordingly, "a defendant's statement regarding offenses for which he had not been charged [are] admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." *Texas v. Cobb*, 532 US 162, 168, 121 S Ct 1335, 149 L Ed 2d 321 (2001). But when the Sixth Amendment right to counsel attaches, it also "encompasses offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." *Id.* at 173. Under *Blockburger v. United States*, 284 US 299, 304, 52 S Ct 180, 76 L Ed 306 (1932), "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact [that] the other does not."

Petitioner contended in his post-conviction case that his attorney should have moved to suppress the incriminating statements that petitioner had made to the informant and the undercover officer because they were obtained in violation of petitioner's Sixth Amendment right to counsel. He argued that, although the statements were not about the sexual-assault case, the murder-for-hire case was so intimately intertwined with the sexual-assault case that interrogating him about one was effectively interrogating him about both.

The post-conviction court rejected that contention, concluding that a suppression motion under the Sixth Amendment would have failed because petitioner's Sixth Amendment right to counsel had attached only to the charges arising from the sexual assault. Petitioner disputes

that conclusion, reasoning that, when two cases involve overlapping evidence or are closely intertwined, the Sixth Amendment prohibits the state from eliciting statements about both cases if the state has begun adversarial proceedings in one of them.

The problem with petitioner's contention is that the Supreme Court rejected the equivalent argument in *Cobb*. There, a home was burglarized and two people who had been in the home were missing. Seven months later, the defendant confessed to the burglary but denied knowing anything about the missing people. The defendant was indicted for burglary, and counsel was appointed for him on the charge. Over a year later, the defendant's father told police that the defendant had confessed to him that he had killed the missing people. Police arrested the defendant, took him into custody, and read him his *Miranda* rights. The defendant waived those rights and, during police interrogation, confessed to the murders. The defendant was prosecuted for capital murder under Texas law and convicted.

The defendant appealed his convictions to the Texas Court of Criminal Appeals, contending that his confession should have been suppressed under the Sixth Amendment because his right to counsel had attached when the attorney was appointed to represent him in the burglary case. According to the defendant, the police were required to obtain his attorney's consent before questioning him about the missing people, and the failure by the police to do that should have led to the suppression of his statements. The Texas court agreed with the defendant, holding that the Sixth Amendment right to counsel attaches not only to charged offenses but also to any other offense that is closely related to the charged offenses. *Cobb v. State*, 93 SW3d 1, 6 (Tex Crim App 2000), *rev'd sub nom, Texas v. Cobb*, 532 US 162, 121 S Ct 1335, 149 L Ed 2d 321 (2001). Consequently, because the burglary and the murders were deeply intertwined, the defendant's confession should have been suppressed. *Id*.

The United States Supreme Court reversed. After noting that several federal Courts of Appeal had adopted a rule similar to that applied by the Texas court, the Court

held that the right to counsel attaches only to "charged offenses," which includes any offense that would be considered under the *Blockburger* test to be the same offense as a charged offense. *Cobb*, 532 US at 168, 173. As previously noted, *Blockburger* provides that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact [that] the other does not." 284 US at 304. The Court noted that, under Texas law, the crimes of burglary and murder each required the state to prove an element that the other did not. Hence, the Texas court had erred in suppressing the defendant's confession, because the police had not violated the defendant's Sixth Amendment right to counsel by interrogating him about the murders.

Here, at the time that the informant and the undercover officer were talking to petitioner, he had been charged with second-degree kidnapping, attempted first-degree rape, first-degree sexual abuse, and coercion, but he had not been charged with the attempted murder of DU or the sexual-assault victim. Each of the crimes with which petitioner had been charged required the state to prove an element that the crimes with which he was subsequently charged did not. Likewise, each of the crimes arising out of the murder-for-hire scheme required the state to prove an element that the previously charged crimes did not require the state to prove. Consequently, the state did not violate petitioner's Sixth Amendment right to counsel when the informant and the undercover officer elicited incriminating statements from petitioner about the murder-for-hire scheme, because the informant and undercover officer did not discuss with petitioner the facts and charges related to petitioner's earlier sexual assault of the victim.

In sum, we conclude that the post-conviction court correctly denied petitioner's claim that he had received inadequate assistance of trial counsel. The state did not violate petitioner's right to counsel under the Fifth or Sixth Amendments when the informant and the undercover officer elicited incriminating statements from petitioner. Hence, a motion under the Fifth and Sixth Amendments to suppress petitioner's statements in the underlying criminal

case would have been denied, and, consequently, petitioner suffered no prejudice from his trial attorney's failure to file such a motion.

Affirmed.