Argued February 22, affirmed May 14, reconsideration
denied June 19, petition for review denied September 18,
1979, 287 Or 409

STATE OF OREGON, *Respondent,*

*v.*

RONALD DURANT MASSEY, *Appellant.*

(No. 23, CA 12047)

594 P2d 1274

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges.

TANZER, J.

## TANZER, J.

Defendant was convicted of first degree manslaughter for the death of the eight-year-old daughter of his female companion. He assigns as error the denial of his motion to suppress fruits of a search pursuant to warrant for the reason that the warrant did not describe with sufficient particularity the things to be seized.

In the affidavit accompanying the warrant, the district attorney of Coos County alleged that the child had been absent from school for the previous 18 days, that when last seen by school personnel her eyes had been blackened and she bore signs of severe bruising and swelling, that her mother had lied to the police about the child's whereabouts, and that she had attempted to persuade the child's grandmother to corroborate the lie. The warrant authorized a search "for evidence of the crimes of child abuse and/or failure to send and maintain child at school."

Police officers, accompanied by the district attorney, served the warrant the same day and conducted a cursory search of the house and grounds where the child, her mother, and the defendant resided. The child was not found. Defendant then demanded that the district attorney leave the house because his presence upset the defendant. While the district attorney was standing outside the house next to defendant's pickup truck, he and a deputy sheriff noticed the smell of putrefying flesh coming from the locked canopy of the pickup. Thinking the child might be inside and the smell might indicate unattended wounds, the district attorney ordered the deputy to break open the canopy. They found the child's dead body.

The Fourth Amendment requires that a warrant be based upon probable cause and that it describe specifically the place to be searched and the property to be

seized.[1] Each of these three elements will be analyzed as it applies to this case.

■ The requirement of probable cause protects citizens against arbitrary official intrusion into their privacy. In this case there was ample factual basis to conclude that there was probable cause to believe that this child was the victim of serious abuse, that she would be at the described premises and that prompt official action was necessary to protect her safety. Therefore, the intrusion upon the defendant's privacy was reasonable.

■ The requirement that a warrant specifically describe the place to be searched is intended to assure that the state may enter only the place intended by judicial direction to be subject to official intrusion and to protect unintended premises from intrusion. *State v. Blackburn/Barber,* 266 Or 28, 511 P2d 381 (1973). Here, the description of the place to be searched was sufficient to guide the officers to the correct premises. Their entry onto the defendant's property was therefore made pursuant to a lawful and proper judicial direction.

■ The requirement that the warrant specifically describe the property to be seized is intended to guide the executing officer toward what is judicially intended and away from what is not. The objective is that the search be as precise as the circumstances allow and that undue rummaging be avoided. *See State v. Tidyman,* 30 Or App 537, 568 P2d 666 *rev den* (1977). Here, the police were looking for a girl. They made only a cursory search of the premises before the district attorney and the deputy sheriff left the defendant's house at his request and discontinued their participation in the investigation pursuant to the search warrant.

---

[1]   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ The degree of specificity which is constitutionally required varies with the circumstances of each case and with the nature of the property to be seized. For example, a higher degree of specificity is usually required where, unlike here, the constitutional rights of free speech and free association are involved. A lesser degree of specificity is required where, due to the nature of the crime, it is probable that evidence exists but the nature of the specific items of evidence of that crime cannot be known in advance. *See State v. Tidyman.*

■ Here, there was a strong probability that a crime involving danger to human life was underway and that imminent action to prevent harm to human life was warranted. The means of committing that harm, however, could not be known in advance of the search.[2] In such a case, a general description with a limitation is a reasonable way to proceed. *See State v. Tidyman.* The description in this warrant, although broad, was sufficient to direct the officers to search for the child and to limit their search to places and items relating to the child. The search for the child did not exceed that purpose or that limitation. We do not recommend the warrant as a model of description but we hold it to be constitutionally sufficient.

The remainder of defendant's assignments of error do not require discussion. We find no error.

Affirmed.

---

[2] The principal objective of the officers was to find the child. The warrant could have named the child, but we are called upon to measure what is, not what might have been.