Argued and submitted September 14, affirmed in part,
reversed in part December 10, 1979

STATE OF OREGON,
*Respondent,*
*v.*
EDWARD GEORGE HODGES,
*Appellant.*

(No. 78-58 C, CA 12465)

603 P2d 1205

Mary Linda Pearson, Monmouth, argued the cause and filed the brief for appellant.

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

TANZER, P. J.

## TANZER, P. J.

The defendant appeals his conviction of arson of his house and of the intentional murder of his wife by means of the same arson of his house. We affirm in part and reverse in part.

## I. MOTION TO SUPPRESS SEIZED EVIDENCE

Defendant assigns as error the denial of his motion to suppress evidence seized at the defendant's house. His challenge is in two parts: He argues (1) that the affidavit upon which the search warrant was based[1]

---

[1] The affidavit alleged:

"I, Ulys Stapleton, being first duly sworn, depose and say: that I am district attorney for Klamath County; that in the early morning hours of February 21, 1978, I arrived at the scene of a fire at 5716 Summers Lane, Klamath Falls, Klamath County, Oregon; that I arrived at approximately 2:00 A.M. February 21, 1978 and at that time the South Suburban Fire Department was on the scene mopping up the fire; that at that time the house was still smoldering; that upon my arrival there I was informed by Robert J. Snyder of the Oregon State Police, and deputy medical examiner, that a female subject was found dead in the house by the firemen; that entry into the residence revealed a female subject sitting on the floor of the bedroom area of the residence; that she was naked and dead; that no other person was found in the residence; that the female subject was located on the floor approximately six feet from a window which connected the bedroom to the outside of the residence; that observation of the window indicated that it had been broken and portions of the broken glass on the outside of the residence were not charred by smoke as were portions of the glass remaining in the frame, indicating the glass was broken prior to the smoke entering the bedroom; that in order to enter the bedroom where the body was found, it is necessary to walk through the front door and through the living room; that in the living room of the residence were found two gas cans which did not have lids; that also found in the living room were a revolver and a shotgun; that Officer Snyder informed me that on February 21, 1978, after responding to the notification of a fire and a dead body, he contacted an individual identified as Effie Hodges who resides at the residence next to 5716 Summers Lane; that Mrs. Hodges informed him that the residence which caught fire, which is 5716 Summers Lane, was occupied by her son, Ed Hodges; that the body in the bedroom I have identified as Sandra Hodges, who was the wife of Ed Hodges, but who had filed for divorce from him; that Mrs. Hodges came to my office the first part of the week of February 13th and discussed with me problems she was having with her husband, including his continual following of her; that the outside of the residence at 5716 Summers Lane was examined by Officer Snyder who informed me that blood had been located near the window previously described as being broken; that I observed blood and it was located in

fails to show probable cause to believe a crime had been committed on the premises searched (defendant's home) or that evidence of crime would be found there, and (2) that the description in the search warrant of the things to be seized is insufficiently particular to satisfy the Fourth Amendment.

## A. *The affidavit.*

Preliminarily, defendant asserts that the allegations derived from Louise Mitchell are legally incompetent to establish probable cause. *See State v. Montigue,* 38 Or App 363, 590 P2d 274 *rev allowed* (1979). We do not reach the issue because if we assume the allegations are improper and disregard them, it becomes our duty to assess the remaining allegations for probable cause, *State v. Albertson,* 1 Or App 486, 462 P2d 458 (1969) *rev den* (1970), and, doing so, we conclude that the remaining allegations are sufficient.

The remaining allegations establish the existence of a fire of a residence containing a dead, naked, uncut woman in the bedroom near a window which was broken before the fire, blood on the side of the house and ground near the window, and open gas cans and weapons in the living room. It is reasonable to infer therefrom that arson and homicide probably had been committed in the house and that evidence of those crimes is likely to be found there. The affidavit is legally sufficient.

spots on the side of the house below the window and on the ground underneath the window; that Officer Snyder informed me that his brief examination of the body which is still in the residence, did not disclose any cuts; that on February 21st, 1978, at approximately 9:00 A.M. I had a conversation with Louise Mitchell, who is the mother of Sandra Hodges, that she informed me that Chuck Brewer, who is the son of Sandra Hodges, received a phone call from Ed Hodges at approximately 9:30 or 10:00 p.m. on February 20, 1978; that Louise Mitchell was told by Chuck Brewer that Ed advised him that his mother (Sandra) would not be home for a couple of hours, maybe midnight, that he (Ed) was taking her out to dinner.

"That based upon the foregoing information I request a search warrant to search the residence located at 5716 Summers Lane, Klamath Falls, Klamath County, Oregon, to search for any and all evidence which may relate to a crime of murder."

[550]

## B. *The search warrant*

We next consider whether the warrant was sufficiently particular in describing the things to be seized. The warrant authorized the seizure of "any and all evidence which may relate to the possible murder of Sandra Hodges" at the house.

The Fourth Amendment authorizes warrants "particularly describing the place to be searched and the things to be seized."

The United States Supreme Court in *Roaden v. Kentucky,* 413 US 496, 501,93 S Ct 2796, 37 L Ed 2d 757 (1973), stated, preliminary to a discussion of particularity, that

> "The Fourth Amendment proscription against 'unreasonable seizures,' applicable to the States through the Fourteenth Amendment, must not be read in a vacuum. A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material."

There is no objective standard of specificity which descriptions in warrants must meet to be sufficiently particular for Fourth Amendment purposes. A determination of whether a description is sufficiently particular must take into account the factual setting of the individual case.

In *State v. Tidyman,* 30 Or App 537, 543, 568 P2d 666 *rev den* (1977), we pointed out that certain things by their nature are impossible to describe with specificity before the search is undertaken. Because the purpose of particularity is "to guide the officer to the thing intended to be seized and to minimize the danger of unwarranted invasion of privacy by unauthorized seizures," 30 Or App at 543, we upheld the authorization of a search "for business records pertaining to ownership [of a theater]" where before the search, identification of the particular records containing this information was impossible.

We also considered the constitutional requirement of particularity in *State v. Massey,* 40 Or App 211, 214,

594 P2d 1274 *rev den* (1979), where we again noted that the description in a warrant "is intended to guide the executing officer toward what is judicially intended and away from what is not. The objective is that the search be as precise as the circumstances allow and that undue rummaging be avoided." 40 Or App at 214. We added that "a lesser degree of specificity is required where, due to the nature of the crime, it is probable that evidence exists but the nature of the specific items cannot be known in advance." 40 Or App at 215. Any warrant description must be evaluated with the principles from *Tidyman* and *Massey* in mind.

A general investigative search of a crime scene, as here, differs in nature from a search to seize a specific object, such as stolen property or a drug shipment. There, police know in advance the items they seek, but only reasonably believe them to be in a certain place. Rather, in an investigative search of the scene of a recently committed crime, the police do not know in advance what specific items they seek, but do know that instrumentalities and other evidence of crime probably exist and they know the premises upon which such items will be found. A general investigative search of such premises is reasonable, notwithstanding the lack of certainty as to what will be found. The basis of the Fourth Amendment being reasonableness, a reasonable application of the particularity clause must take into account the different nature of an investigative search.

In *Mincey v. Arizona,* 437 US 385, 98 S Ct 2408, 57 L Ed 2d 290 (1978), the United States Supreme Court held that a general investigation of a crime may be reasonable, but if it is to be extended, the extended search must be judicially authorized. *See also State v. Eacret,* 40 Or App 341, 595 P2d 490 *rev den* (1979).[2]

---

[2] The fact that the premises were partly destroyed by fire does not lessen the need for a warrant. In *Michigan v. Tyler,* 436 US 499 (1978), the United States Supreme Court found that one's expectation of privacy is not necessarily lessened by the fact that the premises are burned and ruled that investigation at the scene of a fire requires a search warrant.

The implication of *Mincey* and *Eacret* that the search should be discontinued and a warrant obtained earlier rather than later, is intended to legitimatize reasonable crime-scene investigation, not to prohibit it. Conscientious compliance with *Mincey* and *Eacret* tends to result in the suspension of the investigation before there has been opportunity to make sufficient observations to enable the officers to identify the specific instruments or other evidence of the crime to which a warrant would be directed. To require an undue exactitude of particularity in such a situation would be to impose a dilemma upon the police: either suspend the search before the items sought can be described particularly enough for a valid warrant or continue the warrantless search impermissibly so that the observations cannot lawfully be considered by the magistrate. The Fourth Amendment is not so rigid.

Here, as in *Massey,* "the means of committing [the crime] could not be known in advance of the search." 40 Or App at 215. The investigators ceased their warrantless investigation at the crime scene once the "legitimate emergency activities" were completed. *Mincey v. Arizona,* 437 US at 393. Because they conscientiously discontinued their search, the investigators left themselves unable to identify the precise items they wished to seize. All they could request, and all the magistrate could authorize, was a warrant to search for evidence of murder.

The warrant did not authorize a general search. The description, evidence of murder, was relatively narrow. The limitation that could be made, was made. The limitation adequately described "a standard by which the executing officer could readily identify the items to be seized under the warrant and leave those items which were not to be seized." *State v. Tidyman,* 30 Or App at 546. Given the nature of the investigation and the search, this description was constitutionally sufficient.

[553]

## II. MOTION TO SUPPRESS STATEMENTS

Next the defendant assigns as error the denial of his motion to suppress his statements. He contends that he was incapable of making a knowing and voluntary waiver of his *Miranda* rights because he was in pain and shock from physical injuries. Physical injury does not necessarily incapacitate one from waiving rights. Whether there was a knowing, voluntary waiver remains an issue of fact to be determined from the totality of the circumstances. *State v. Pressel,* 2 Or App 477, 479, 468 P2d 915 *rev den* (1970). We have no reason to disturb the trial court's finding. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

## III. SENTENCING

The defendant contends that the murder and arson charges should merge for purposes of punishment. This is not actually a question of merger, however, and to so characterize the issue merely invites confusion. In *State v. Roach,* 271 Or 764, n 1, 534 P2d 508 (1975), the Supreme Court explained that "merger is based on the premise that when the act involved in one charge is necessarily involved in another charge, only one offense is committed and only one charge may be the basis for conviction." Such is not the case here. All of the elements of the crime of arson are not necessarily included in the commission of the crime of murder. Arson and murder are "entirely separate and distinct criminal acts involving different elements." *State v. Cloutier,* 286 Or 579, 587, 596 P2d 1278 (1979). The matter, then, is not one of merger but of sentencing when a defendant is convicted of two offenses committed toward the accomplishment of a single objective.

In *State v. Cloutier* the Supreme Court addressed the question of sentencing a defendant convicted of a burglary and the felony in furtherance of which the breaking and entering was committed. The court concluded that the legislature intended that when a burglary is followed by the commission of the felony

intended by the burglary, the penalty must be limited to that prescribed for the offense carrying the greater potential sentence. Recognizing that the sentencing problem occurs in more than just burglary and subsequent felony cases, the court stated that for cases where an offense,

"* * * though neither inchoate nor necessarily included in another, may be committed as one step in the commission of another offense in the course of a single criminal episode with a single objective, * * * we assume that punishment for the most serious crime committed meets the legislature's penal objectives unless there are legislative indications to the contrary." 286 Or at 597.

This rule is applicable here. In fact, the argument for only one sentence to reflect the more serious penalty is more compelling here, where the act of arson was also the homicidal act, whereas in *Cloutier* the burglary was only the first step toward the completion of the objective of theft. We therefore conclude that the conviction for arson must be set aside. The life sentence for the murder conviction is mandated by ORS 163.115(5). Hence we uphold it and vacate the conviction and sentence for arson.

Affirmed in part; reversed in part.[3]

---

[3] We uphold without discussion the other rulings assigned as error, under the principles hitherto stated in *State v. Wampler,* 30 Or App 931, 569 P2d 46 (1977) *rev den* (1978), and *State v. Fentress,* 35 Or App 63, 580 P2d 1044 (1978).